UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

ANDRES GUZMAN,

                    Plaintiff,                          06 Civ. 13408

          -against-                                     OPINION

MICHAEL J. ASTRUE,

Commissioner of Social Security,

                    Defendant.

------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/8/08

A P P E A R A N C E S:


          Attorneys for Plaintiff

          SHER, HERMAN, BELLONE AND TIPOGRAPH, P.C.
          277 Broadway
          New York, NY  10007
          By:  Robert M. Bellone, Esq.


          Attorneys for Defendant

          MICHAEL J. GARCIA
          United States Attorney for the
            Southern District of New York
          86 Chambers Street, 3rd Floor
          New York, NY  10007
          By:  Susan D. Baird, Assistant U.S. Attorney

**Sweet, D.J.**

Plaintiff Andres Guzman ("Guzman" or the "Plaintiff")
has moved for judgment on the pleading to reverse the decision
of Michael J. Astrue, Commissioner of Social Security (the
"Commissioner") that Guzman failed to demonstrate disability
under the Social Security Act (the "Act"). The Commissioner has
cross-moved for judgment on the pleadings affirming his
decision. Upon the findings and conclusions set forth below,
the motion of Guzman is denied, the cross-motion of the
Commissioner is granted, and the decision of the Commissioner is
affirmed.

## I. PRIOR PROCEEDINGS

The Plaintiff filed applications for disability
insurance benefits and Supplemental Security Income ("SSI")
benefits on March 19, 2002, alleging that he had become disabled
fifteen months earlier, as of December 30, 2000. The
applications were denied, and the Plaintiff requested a hearing.
On October 6, 2003, an administrative hearing was held before
Administrative Law Judge Louis V. Zamora (the "ALJ"). On
October 29, 2003, the ALJ issued a decision finding Plaintiff
disabled as of April 9, 2002, but not before that date.

1

Plaintiff requested review of that decision, and on January 28, 2004, the Appeals Council issued an order vacating the ALJ's decision and remanded the claim for further proceedings. Plaintiff and his attorney attended a supplemental hearing on July 25, 2005. Thereafter, on March 31, 2006, the ALJ issued a decision denying Plaintiff's claims. This decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review on October 20, 2006.

Plaintiff initiated this action on November 21, 2006. The instant motions were marked fully submitted on April 11, 2008.

## II. THE RECORD

### Dr. Peter Graham

Dr. Peter Graham, a specialist in internal medicine, examined the Plaintiff twice at the request of the Social Security Administration, first in April, 2002, and then in December, 2005. On April 9, 2002, Dr. Graham reported that Plaintiff was well-developed, well-nourished, and in no actual distress. Plaintiff's blood pressure was 150/90. His behavior was appropriate, and his mood and affect were normal. His

2

communication was adequate with no impairment of speech. After
an examination described by the Commissioner's Memorandum of Law
in Opposition, Dr. Graham diagnosed: (1) neck and back pain by
history, with possible mild functional deficit present, (2)
joint pain by history, with "questionable functional deficit in
the left shoulder," and (3) hypertension under fair control.
With respect to the diagnosis of joint pain by history, Dr.
Graham stated, "He appears not to cooperate with the
examination." Dr. Graham opined that the Plaintiff could sit,
stand, walk, travel, hear and speak. He further opined that
lifting, carrying or handling objects may be limited by back and
shoulder problems.

On December 8, 2005, Dr. Graham examined the Plaintiff
for a second time. This examination is also described in the
Commissioner's Memorandum in Opposition. Dr. Graham diagnosed:
(1) neck and back pain by history, with mild limitation of
function in the lumbar spine, (2) left shoulder pain with
minimal limitation of function present, (3) diabetes, without
diabetic retinopathy, and (4) hypertension, poorly controlled.
The doctor opined that the Plaintiff was able to sit, stand, and
walk. Dr. Graham stated that heavy lifting and carrying were
limited by back problems. According to Dr. Graham, Plaintiff
had a normal ability to hear, speak, travel and handle objects.

On December 12, 2005, Dr. Graham completed a detailed assessment of the Plaintiff's residual functional capacity. Dr. Graham opined that the Plaintiff could lift and carry fifty pounds occasionally, and twenty pounds frequently. He stated that Plaintiff had no limitation with respect to standing, walking, sitting, pushing and pulling. Dr. Graham opined that Plaintiff could occasionally climb, balance, kneel, crouch, crawl, and stoop. According to Dr. Graham, Plaintiff had no limitations in his manipulative, visual, or communicative abilities. The doctor also stated that Plaintiff was limited from exposure to temperature extremes, noise, dust, vibration, humidity, hazards and fumes.

## Dr. Avraham Y. Henoch

The Plaintiff submitted three worker's compensation forms signed by Dr. Avraham Henoch. The forms indicated that Dr. Henoch had seen Plaintiff between December, 1998 and July, 1999, and also in July, 2001 and November, 2001. The forms contained no clinical or objective findings, but each form had a box checked indicating that Plaintiff had a "total disability." A subpoena was issued to Dr. Henoch on February 10, 2003, requesting that he produce all medical records relating to

4

Plaintiff by March 3, 2003. No records were produced in response to the subpoena.

Subsequently, Plaintiff submitted a document entitled "Disability Narrative," signed by Dr. Henoch, and dated September 25, 2003. The Disability Narrative is described in the Commissioner's Memorandum in Opposition.

Dr. Henoch referred to and described, but did not provide copies of, reports of three magnetic resonance imaging ("MRI") tests and an electromyogram ("EMG").

Dr. Henoch diagnosed post-traumatic stress disorder, major depression with anxiety, hypertension, diabetes type II, lumbosacral spine sprain, lumbosacral neuropathy, cervical spine sprain, and cervical radiculopathy. He also assessed that the Plaintiff had difficulty in social functioning and poor stress tolerance. Dr. Henoch also provided an "assessment," which listed thirteen conditions, as follows: (1) lumbosacral sprain, (2) lumbosacral muscle spasm, (3) lumbosacral herniated disc, (4) lumbosacral neuropathy, (5) post-traumatic degenerative joint disease of the cervical spine and lumbar spine, (6) cervical sprain, (7) cervical muscle spasm, (8) cervical herniated disc, (9) hypertension, (10) diabetes, (11) left

shoulder sprain, (12) left shoulder rotator cuff pathology, and (13) post-traumatic degenerative joint disease of the right knee.

In addition, Dr. Henoch assessed that the Plaintiff was unable to sit, stand or walk for more than one hour a day continuously, and could not lift or carry more than five pounds continuously "due to lumbosacral and cervical pathology and upper extremity pathology." Dr. Henloch stated that the Plaintiff could not grasp, turn or twist objects, use his hands for fine manipulation, or use his arms to reach overhead "due to cervical and lumbar pathology." He further stated, "patient experiences pain and fatigue which are severe enough to limit attention and concentration," and that "[t]his is complicated by major depression and anxiety." He stated that Plaintiff's orthopedic complaints were significantly exacerbated by his psychiatric disorders, and that Plaintiff was unable to tolerate even low work stress due to his psychiatric disorders and his cervical and lumbar chronic pain. According to Dr. Henoch, Plaintiff "would likely be absent more than three times a month and would have many bad days." The doctor further opined that the Plaintiff could not tolerate environmental conditions such as heights, dust, extremes of humidity, temperature, psychological stress, noise, fumes and gases, and that he was

6

unable to push, pull, bend, or stoop. Dr. Henoch also stated that the Plaintiff could not drive or take public transportation because he was unable to sit or stand for prolonged periods, and was unable to tolerate the stress of a subway car or driving in the city. According to Dr. Henoch, Plaintiff was also not capable of performing minimal sedentary work on a consistent basis due to his multiple orthopedic and psychiatric disorders.

The ALJ issues a second subpoena to Dr. Henoch on March 16, 2004, requesting all medical records from December 30, 2000, to the present. Dr. Henoch did not respond to this subpoena. On November 14, 2005, the ALJ issued a third subpoena to Dr. Henoch, requesting all medical records from December 30, 1999, to the present. Dr. Henoch also ignored this third subpoena.

## Dr. A. Delachapelle

On December 15, 2005, the Plaintiff underwent a psychiatric consultative examination by Dr. Delachapelle. Dr. Delachapelle assessed that Plaintiff's memory was intact for recent and remote events and his fund of information was within normal limits. Dr. Delachapelle assessed that the Plaintiff had a satisfactory ability to understand, carry out, and remember

instructions and to respond appropriately to supervision, co-
workers and work pressures in a work setting. He diagnosed
depression secondary to orthopedic injury.

Dr. Delachapelle completed an assessment of
Plaintiff's mental residual functional capacity on December 22,
2005. He assessed that Plaintiff's ability to understand,
remember, and carry out instructions was not affected by his
impairment. He also assessed that Plaintiff's ability to
respond appropriately to supervision, co-workers, and work
pressures in a work setting was not affected by his impairment.

## Plaintiff's Testimony

The Plaintiff testified at the administrative hearing
that he was born in October, 1946, in Puerto Rico. He stated
that he had obtained a high school education and attended
college for two years. At the first hearing, held in October,
2003, Plaintiff asked to proceed in English, although an
interpreter was available if needed. At the second hearing, in
July, 2005, Plaintiff used the services of the interpreter, and
testified that he spoke only "a little" English. However, in a
report completed March, 2002, Plaintiff stated that he could
both speak and read English. Plaintiff testified that he had

8

worked in the past as a maintenance person, which required him to do electrical or plumbing repair, and general maintenance such as sweeping and mopping. He stated that this job required lifting fifty pounds occasionally and twenty-five pounds frequently. Plaintiff also reported that he worked in 2000 as the superintendent of an apartment complex, and had worked for seventeen years, from 1970 to 1987, as a police officer in Puerto Rico.

Plaintiff testified that in December, 1998, two years before he allegedly became disabled, he had an accident at work, falling backward while trying to lift a heavy industrial toilet. He stated that he experienced left shoulder, neck, and lower back pain due to the accident. Plaintiff received Workers Compensation as a result of the accident. Plaintiff testified at the first hearing that as a result of the accident, he could not apply pressure with his left, non-dominant, hand and at the supplemental hearing he claimed that he dropped things. He stated that he could not lift ten pounds. Plaintiff also stated that he had to alternate sitting and standing and that he could kneel, although with difficulty.

Plaintiff stated that he experienced depression, but that medication for the depression was discontinued because it

9

had caused liver problems. In an April, 2002 written report, he stated that he had no problems paying attention or finishing what he started, and could follow spoken and written instructions if they were clear and to the point. He also stated that he had no problem getting along with bosses, teachers, police, landlords or other people in authority. He stated he had to write things down in order to remember them.

Plaintiff reported in April, 2002, that he had been prescribed a brace or splint, but he testified at the October, 2003, hearing that he used a cane to walk. Plaintiff testified that he had a driver's license, and at the first hearing he stated that he drove for short periods, but at the second hearing, he claimed that he did not drive. He asserted that he could not drive because his legs became numb. However, in a written report, Plaintiff stated that he could drive and ride in a car. Plaintiff also acknowledged that he could travel by bus or subway alone. Although Plaintiff testified that his wife helped him to dress and he could not do any housework, in a written report he stated that he had no problems with personal care and that he did household repairs and ran errands for his wife.

With respect to his activities, Plaintiff stated that he attended church about three times a week. He stated that he walked for one-half hour on Mondays, Wednesdays, and Fridays. He reported doing household repairs and doing errands. He also reported going shopping, but stated that he did not shop for long, because he hated shopping.

## Evidence Submitted to the Appeals Council

Sometime between July and October, 2006, Plaintiff's counsel submitted to the Appeals Council two documents prepared by Dr. Henoch, each dated August 4, 2005. The first document was entitled "Comprehensive Evaluation," and the second was a form entitled "Physician's Report for Claim of Disability Due to Physical Impairment."

In the "Comprehensive Evaluation" document, Dr. Henoch reported the results of a physical examination, but did not state the date of the examination. Blood pressure was reported as 150/90, and the doctor stated that S1 and S2 heart sounds could be heard, with persistent displacement of the PMI to the mid-axillary line due to hypertensive cardiomyopathy. Examination of the cervical spine reportedly showed spasm and limited flexion and left lateral bending. According to Dr.

11

Henoch, there was marked spasm of the paravertebral lumbosacral spine, and flexion and extension was restricted. The doctor reported positive Lasegue's test, and positive straight leg raising test. In addition, Dr. Henoch reported diffuse tenderness of the left shoulder with restricted flexion and abduction. Dr. Henoch also reported the results of the same MRI and EMG studies that he had reported in his September, 2003, report but did not note the date of these studies or include copies of the reports.

On mental status examination, Plaintiff reportedly had a constricted affect and depressed mood. He reportedly could follow simple, but not complex, instructions. Plaintiff's memory, attention and calculation reportedly showed moderate deficits. There was no evidence of thought disorder or suicidal ideation.

Dr. Henoch's diagnoses were similar to his September, 2003, diagnoses, except that in August, 2005, he did not diagnose lumbosacral neuropathy and cervical radiculopathy, and added diagnoses of left shoulder and right knee sprain. Dr. Henoch's August, 2005, report, like the September, 2003, report, contained an assessment of thirteen conditions. However, the August, 2005, report dropped the assessments of lumbosacral

sprain, lumbosacral muscle spasm, cervical herniated disc, and posttraumatic degenerative joint disease of the right knee, and added assessments of post traumatic degenerative joint disease of the left shoulder, cervical radiculopathy, spondylosis of the cervical and lumbar spine, and muscle spasm of the lumbosacral spine.

In the August, 2005, report, Dr. Henoch again assessed a restricted residual functional capacity. He concluded that due to psychiatric and orthopedic disorders, Plaintiff was unable to tolerate stress or maintain concentration to work for a six-hour day, five days per week. In the "Physician's Report for Claim of Disability Due to Physical Impairment" form, Dr. Henoch was asked to give his first and last dates of treatment, and the average frequency of treatment. He wrote "8/4/5." He assessed that Plaintiff had a restricted residual functional capacity. Asked whether Plaintiff's condition met or equaled the requirements of the "Listing of Impairments," the doctor checked "yes." However, he did not indicate which listed impairment Plaintiff's condition met or equaled, and his only explanation for this opinion was "see narrative." The doctor concluded that Plaintiff remained totally disabled from any work.

**III. DISCUSSION**

## A.  **Standard of Review**

The Social Security Act provides that the "findings of
the Commissioner as to any fact, if supported by substantial
evidence, shall be conclusive . . . ."  42 U.S.C. § 405(g).  See
also Richardson v. Perales, 402 U.S. 389, 401 (1971); Perez v.
Chater, 77 F.3d 41, 46 (2d Cir. 1996).  Substantial evidence
means "more than a mere scintilla.  It means such relevant
evidence as a reasonable mind might accept as adequate to
support a conclusion."  Richardson, 402 U.S. at 401 (quoting
Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Halloran
v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004).  The substantial
evidence test applies to the inferences and conclusions drawn
from basic evidentiary facts as well as the facts themselves.
Murphy v. Sec'y of HHS, 62 F. Supp. 2d 1104, 1106 (S.D.N.Y.
1999).

In assessing whether the evidence supporting the
Secretary's position is substantial, the Court does not look at
that evidence in isolation but rather will view it in light of
other evidence that detracts from it.  Alston v. Sullivan, 904
F.2d 122, 126 (2d Cir. 1990).  However, if the Court finds that

there is substantial evidence supporting the Commissioner's
determination, the Commissioner's decision must be upheld, even
if there is also substantial evidence for the plaintiff's
position. Id.

## B. The Commissioner's Disability Determination Is Supported by Substantial Evidence

In order to establish disability under the Social
Security Act, a claimant has the burden of establishing
"inability to engage in any substantial gainful activity by
reason of any medically determinable physical or mental
impairment which can be expected to result in death or which has
lasted or can be expected to last for a continuous period of not
less than 12 months," 42 U.S.C. § 423(d)(1)(A), and the
impairment must be of "such severity that he is not only unable
to do his previous work but cannot, considering his age,
education, and work experience, engage in any other kind of
substantial gainful work which exists in the national economy."
Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998) (quoting 42
U.S.C. § 423(d)(2)(A)).

The Commissioner's regulations prescribe a five-step procedure for evaluating disability claims. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

> Step one asks if the claimant is currently engaged in "substantial gainful activity." Step two asks if the claimant's impairment is "severe." Step three asks if the impairment appears in the "Listing of Impairments," 20 C.F.R. Part 404, Subpart P, App. 1. Step four asks if the claimant can still do "past relevant work." Step five asks if the claimant "can make an adjustment to other work," with reference to the "Medical Vocational Guidelines" ("the Grids"), 20 C.F.R. Part 404, Subpart P, App. 2, Tables 1-3.

Williams v. Comm'r of Soc. Sec., 236 Fed. Appx. 641, 643 (2d Cir. 2007). If the claimant shows that his impairment renders him unable to perform his past work, the burden shifts to the Commissioner to show there is other gainful work in the national economy which the claimant could perform. Belsamo, 142 F.3d at 80; Carroll v. Sec'y of HHS, 705 F.2d 638, 642 (2d Cir. 1983).

The ALJ evaluated Plaintiff's claim pursuant to these five steps, and found that Plaintiff had severe impairments of left shoulder disorder, back pain and hypertension, but that the impairments, either singly or in combination, did not meet the criteria of an impairment in the listing of impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. The ALJ then determined that Plaintiff had residual functional capacity to perform

medium work. At the fourth step, the ALJ determined that given

his residual functional capacity, Plaintiff could do his past

relevant work as a maintenance worker. In the alternative, the

ALJ continued to the fifth step and considered Plaintiff's

advanced age of 55 to 60 years old, his higher education, his

ability to communicate effectively in English, and his residual

functional capacity for medium work, and applied Rules 203.15

and 203.17 of the medical-vocational guidelines, 20 C.F.R. Part

404, Subpart P, Appendix 2, to find that there were a

significant number of jobs in the national economy that

Plaintiff could perform. See 20 C.F.R. §§ 404.1520(f),

416.920(f). The ALJ therefore determined that Plaintiff was not

disabled.

### 1. There Was Substantial Evidence that Plaintiff Did Not Have a Severe Mental Impairment

As the ALJ noted, although Plaintiff stated at the

hearing that he had been treated for depression, the evidence

did not support this claim. While Plaintiff testified that he

was treated at Morris Heights Center for depression, the report

from this facility indicated that Plaintiff was treated only for

a left shoulder problem. Plaintiff's March, 2002 disability

report indicated that he was disabled based only on physical

17

problems, not based on depression, and stated that Plaintiff was treated only by Dr. Henoch.

In addition, Plaintiff underwent a thorough mental status examination by Dr. Delachapelle, and the exam revealed benign findings. Dr. Delachapelle assessed that Plaintiff's memory was intact and his fund of information was within normal limits. Plaintiff could recall three out of three objects after a five-minute interval, he performed serial sevens and simple arithmetic, and he reproduced geometric shapes and spelled completely and accurately. Dr. Delachapelle also assessed that Plaintiff's intellectual functioning was average, and he noted that Plaintiff reported having friends. In addition, Dr. Delachapelle assessed that Plaintiff had a satisfactory ability to understand, carry out, and remember instructions, and had a satisfactory ability to respond appropriately to supervision, coworkers, and work pressures in a work setting.

Dr. Graham, who examined Plaintiff twice, stated that his behavior, mood, and affect were normal, and that he was alert and oriented.

Such assessments constitute substantial evidence in support of the ALJ's finding that Plaintiff did not have a severe mental impairment.

While Dr. Henoch prepared a report that diagnosed Plaintiff with post-traumatic stress disorder and major depression with anxiety, the ALJ was not required to accept Dr. Henoch's opinion. No evidence was presented to demonstrate that Dr. Henoch ever treated Plaintiff for a mental impairment. Thus, Dr. Henoch's opinion on this matter was not entitled to any special weight. While evidence was produced indicating that Dr. Henoch had evaluated Plaintiff's orthopedic complaints in connection with his Worker's Compensation claim, these documents contained no diagnosis of a mental impairment. Accordingly, Dr. Henoch's opinion does not disturb the ALJ's finding that Plaintiff did not have a severe mental impairment.

> *2. There Was Substantial Evidence that Plaintiff's Condition Did Not Meet or Equal the Requirements of Section 1.05 of the Listing of Impairments*

Plaintiff asserts that his condition meets the requirements of section 1.05 of the listing of impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.05. Plaintiff bears the burden of proving that his impairment meets or equals the

19

requirements of a listed impairment, Bowen v. Yuckert, 482 U.S. 137,146 n. 5 (1987), and in order to show that an impairment meets the requirements of a listing, "it must meet *all* of the specified medical criteria." Sullivan v. Zebley, 493 U.S. 521, 530 (1990) (emphasis in original). Plaintiff asserts that his back impairment meets the requirements of section 1.05.C of the listings. However, the listing quoted by Plaintiff is no longer in force. The Commissioner promulgated revised regulations for assessing musculoskeletal impairments, effective February 19, 2002. See Revised Medical Criteria for Determination of Disability, Musculoskeletal System and Related Criteria, 66 Fed. Reg. 58010 (Nov. 19, 2001). Plaintiff has failed to demonstrate that his condition meets the requirements of any current listing.

Section 1.04.A of the current listings relates to disorders of the spine. It states:

1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equine) or the spinal cord. With:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex

loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

or

B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;

or

C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04.A. The regulations relating to musculoskeletal impairments require that examination of the spine should include a detailed description of gait, range of motion of the spine or straight leg-raising in both the sitting and supine positions, and any motor and sensory abnormalities, any muscles spasm, and deep tendon reflexes. 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.00.E. Evidence of atrophy is not acceptable as evidence of significant motor loss without circumferential measurements of both thighs and lower legs. Id.

Plaintiff has failed to demonstrate that his condition meets the requirements of the relevant listing. The detailed

21

reports of Dr. Graham's two examinations showed generally benign findings, and do not support a finding that Plaintiff's condition met the requirements of a listed impairment. Nor does Dr. Henoch's report support such a finding. Not only did his report not contain the information required by section 1.00.E, it is contradicted by Dr. Graham, and unsupported by any documentation, as Dr. Henoch did not respond to subpoenas for his complete records.

After a generally normal examination in 2002, Dr. Graham found that plaintiff had neck and back pain by history with only a possible mild functional deficit in the left shoulder. Upon reexamination in 2005, Dr. Graham found that Plaintiff had normal muscle strength, and that his hand dexterity was normal. He also reported that the neurological examination was normal and that Plaintiff had only a minimal limitation of function. Dr. Graham specifically opined that Plaintiff's ability to sit, stand, walk, push and pull was not affected by his impairments. The sole limitation found by Dr. Graham was that heavy lifting and carrying were limited by back problems. Dr. Graham opined that Plaintiff could lift and carry fifty pounds occasionally, and twenty pounds frequently. He also opined that Plaintiff could occasionally climb, balance, kneel, crouch, crawl, and stoop. Dr. Graham's assessment is

consistent with the requirements of medium work and fully
supports the ALJ's finding. See 20 C.F.R. §§ 404.1567(c),
416.967(c) (defining medium work).

The ALJ properly considered and rejected the opinion
of Dr. Henoch regarding the nature and severity of Plaintiff's
condition. Dr. Henoch provided a thirteen-item list of
plaintiff's conditions, and gave a restricted assessment of
Plaintiffs ability to sit, stand, walk, lift, carry, grasp,
turn, twist, and reach overhead. However, as the ALJ noted, Dr.
Henoch did not identify the date of any examination he performed
in connection with his September, 2003 report, and the report
did not provide a firm basis for the doctor's conclusions. In
an attempt to determine whether there were in fact clinical and
objective findings to support Dr. Henoch's opinion, the ALJ
issued three subpoenas to Dr. Henoch for any underlying medical
records, but Dr. Henoch did not comply with the subpoenas.

Further, Plaintiff has failed to demonstrate that Dr.
Henoch was his treating physician or that Dr. Henoch's opinion
was entitled to the special weight accorded that of a treating
physician. A doctor may be considered a treating source if he
has an ongoing treatment relationship with a patient, and sees
or has seen the claimant with a frequency consistent with

23

accepted medical practice. 20 C.F.R. §§ 404.1502 and 416.902.

Dr. Henoch declined to produce his treatment notes, and did not

otherwise specify the frequency with which he saw plaintiff, and

Plaintiff has not otherwise established that Dr. Henoch is a

treating source. Consequently, Dr. Henoch's opinion is not

entitled to the extra weight accorded a treating physician's

opinion. See 20 C.F.R. §§ 404.1527(d) and 416.927(d).

Under these circumstances, the ALJ was not required to

accord Dr. Henoch's opinion any particular weight. See 20

C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (opinion of treating

physician is given less weight where not supported by clinical

and objective findings).

> 3. *There Was Substantial Evidence that Plaintiff's*
> *Subjective Complaints of Pain Were Not Credible*
> *to the Extent Alleged*

The ALJ also considered Plaintiff's self-serving

allegations of disabling pain, and found that they were not

credible to the extent alleged. Subjective symptoms alone

cannot be the basis for a finding of disability. Rather,

Plaintiff must demonstrate by medical signs and laboratory

findings that an underlying condition exists that can reasonably

24

be expected to produce the symptoms alleged. 42 U.S.C. §
423(d)(5)(A); 20 C.F.R. §§ 404.1529(b), 416.929(b).

If a medically determinable impairment exists,
objective medical evidence is considered in determining whether
disability exists. 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).
The ALJ also considers such factors as the frequency and
duration of symptoms, precipitating and aggravating factors, the
effect of medication, treatment, functional restrictions, and
the claimant's daily activities. 20 C.F.R. §§ 404.1529(c)(3),
416.929(c)(3).

Plaintiff's allegations far exceeded the credible
medical evidence. Therefore, the ALJ considered other factors,
which support the finding that Plaintiff is not disabled. For
example, while at the 2005 consultative examination and in a
written report, Plaintiff reported no difficulty dressing,
grooming, toileting and bathing. Similarly, despite Plaintiff's
testimony that his activities were severely limited, he
indicated in a written report that he could walk, drive and ride
in car, and use public transportation. He stated in the same
report that he was able to do household repairs and run errands
for his wife. The ALJ properly considered these inconsistencies

25

in evaluating the credibility of Plaintiff's testimony. <u>See</u>
<u>Snell v. Apfel</u>, 177 F.3d 128, 135 (2d Cir. 1999).

> 4. *There Was Substantial Evidence that*
> *Plaintiff Could Do His Past Relevant Work As*
> *A Maintenance Worker*

The ALJ next considered whether Plaintiff could return
to his past relevant work as a maintenance worker. Plaintiff's
previous employment required that he stand, walk and lift up to
fifty pounds occasionally. The ALJ found that the job as
Plaintiff described it was consistent with medium work. <u>See</u>
<u>Dictionary of Occupational Titles</u> 382.664-010 (4th ed. rev.
1991) (describing job of janitor as medium work). As the ALJ
had already found that Plaintiff could perform medium work, he
correctly determined that Plaintiff could perform his past
relevant work.

> 5. *There Was Substantial Evidence of a Significant*
> *Number of Other Jobs in the National Economy that*
> *Plaintiff Could Do*

In the alternative, the ALJ continued to step five of
the sequential evaluation process. The ALJ considered
Plaintiff's age, education and work experience as vocational
factors that affect a claimant's ability to perform other work

in the national economy. 20 C.F.R. §§ 404.1563-1565, 416.963-965. During the period at issue, Plaintiff was an individual of advanced age (55 at the time of alleged onset of disability), closely approaching retirement age (60 when the ALJ rendered his decision), with more than a high school education, an ability to read and write English, and no transferable skills. These vocational factors, together with Plaintiff's residual functional capacity for medium work, correspond with medical-vocational rules 203.07 and 203.15. 20 C.F.R. Part 404, Subpart P, Appendix 2, Rules 203.07 and 203.15. The ALJ properly determined that those rules directed a conclusion that Plaintiff was not disabled. Thus, the record establishes that there is other work in the economy that Plaintiff could perform. See 20 C.F.R 404.1520(g) and 416.920(g).

## C.    **The Appeals Council Decision Was Appropriate**

The evidence received by the Appeals Council consisted of an additional unsupported report from Dr. Henoch with a list of disabilities. The report appeared to refer to one examination in August, 2005. This report, like Dr. Henoch's earlier report, contained no copies of the purported test results. The Council decided that the evidence submitted to it did not provide a basis for changing the ALJ's decision.

27

Plaintiff suggests that the Appeals Council did not provide a sufficient rationale for denying Plaintiff's request for review. There is no requirement that the Appeals Council issue a decision when it denies review. See 20 C.F.R. §§ 404.979; 416.1479. The Appeals Council, in accordance with the regulations, found that there was substantial evidence to support a finding that Plaintiff was not disabled and upheld the ALJ's decision.

After evaluating the evidence of record, the Commissioner determined that Plaintiff failed to sustain his burden of proof that he was under a disability within the meaning of the Act. This decision is reasonable and is affirmed by this Court under the substantial evidence rule. 42 U.S.C. § 405(g).

**IV. CONCLUSION**

The motion of the Plaintiff is denied, the cross-motion of the Commissioner is granted and his decision is affirmed.

**New York, N.Y.**

August 28, 2008

ROBERT W. SWEET
U.S.D.J.